885 F.2d 866
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Eva M. REEDY & Stella M. Curtis, Plaintiffs-Appellants,
v.
SAFEWAY STORES, INC., & United Food & Commercial Workers
Union, Local 400, Defendants-Appellees.
 No. 88-3175.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1989.
Decided Sept. 6, 1989.
 
 1
 Alan Steven Shacter for appellants.
 
 
 2
 Carey Robert Butsavage (Baptiste & Wilder, P.C. on brief), Roy Anthony Sheetz (Richard C. Hotvedt, Morgan, Lewis & Bockius on brief) for appellees.
 
 
 3
 Before WIDENER and K.K. HALL, Circuit Judges, and JOSEPH ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 
 PER CURIAM
 
 4
 Eva M. Reedy and Stella M. Curtis appeal from the district court's grant of summary judgment in favor of United Food and Commercial Workers Union, Local 400 (the Union), and the district court's denial of their motion for summary judgment against Safeway Stores, Inc.[1] Finding no error on the part of the district court, we affirm.
 
 
 5
 Reedy and Curtis are former employees of a Safeway Store in Fairfax, Virginia. On February 17, 1986, Reedy was shopping in this store and Curtis was operating a scanning check-out register. On this date another Safeway employee, Sue O'Brien, visited the Fairfax store to conduct a routine evaluation of Curtis' performance. While O'Brien and Alan Price, the Assistant Store Manager, were observing Curtis from a catwalk located above Curtis' register, Reedy went through Curtis' check-out line. O'Brien noticed that Curtis was improperly checking out items.[2]
 
 
 6
 O'Brien and Price left the catwalk and confronted Reedy and Curtis. Price inspected the contents of Reedy's shopping bag and compared them with the receipt. This comparison revealed what O'Brien had observed: many items in the bag were not recorded on the receipt. Both Reedy and Curtis were then suspended pending an investigation.
 
 
 7
 That night, Reedy contacted Thomas Fennell, the Union's Director of Membership Services, and informed him of the incident. The following day the Union formally protested Reedy and Curtis' suspension. Fennell, along with union representative James Crouch, then met with Reedy and Curtis to discuss their situation. Reedy informed Fennell and Crouch that she was following a common store practice by redeeming coupons for earlier purchases that she had made. Curtis told Fennell and Crouch that she had just come off of sick leave, was under medication, and may have made some mistakes in scanning because she was having trouble hearing the scanning machine "beep" to let her know the items were being scanned.
 
 
 8
 After receiving these explanations, Fennell and Crouch conducted a further investigation. Interviews with several store employees and an evaluation of the physical evidence yielded evidence unfavorable to Reedy and Curtis.[3] Despite this, Fennell scheduled a second-step grievance meeting on March 17 with Donald Saulpaugh, Safeway's Personnel Director. At this meeting Fennell urged Safeway to reinstate Reedy and Curtis. Saulpaugh took the matter under advisement, but informed Fennell that it felt it had more than sufficient evidence to uphold the discharge of the two employees.
 
 
 9
 Subsequently, Safeway held to its position not to reinstate Reedy and Curtis. Fennell then appealed their cases to the third-step grievance procedure and scheduled another meeting with Saulpaugh for May 28. Although Fennell argued on behalf of Reedy and Curtis at this meeting, Safeway decided to stand by its decision to discharge the two employees. Fennell then informed Reedy and Curtis that there was nothing more he could do on their behalf; however, after Reedy and Curtis expressed their displeasure with his decision, Fennell told the two employees that he would turn the matter over to the Union's General Counsel for a de novo investigation.
 
 
 10
 Jeffrey Lewis, the Union's General Counsel, began his investigation in October 1986. He interviewed Reedy, Curtis, and other relevant witnesses. He also reviewed the documentary evidence and visited the store to examine the layout. Based on this investigation, Lewis determined that Reedy and Curtis' grievances did not warrant arbitration. Reedy and Curtis then appealed Lewis' decision to the Union's Executive Board. In September 1987, the Executive Board considered the matter and unanimously voted to uphold the decision not to arbitrate Reedy and Curtis' grievances.
 
 
 11
 Reedy and Curtis then filed this action against Safeway and the Union alleging breach of a collective bargaining agreement and failure to provide fair representation, respectively. The Union moved for summary judgment on the ground that Reedy and Curtis had failed to raise a genuine issue of fact on their fair representation claim. The district court granted this motion and Reedy and Curtis now appeal.
 
 
 12
 Although a union has considerable discretion in handling employee grievances, the duty of fair representation requires the union to conform its conduct to certain standards. Griffin v. International Union, United Auto., Aerospace and Agric. Implement Workers of Amer., UAW, 469 F.2d 181, 183 (4th Cir.1972). This duty is imposed on the union as a corollary of the union's status as the exclusive representative in a bargaining unit. Peterson v. Air Line Pilots Assoc., Int'l., 759 F.2d 1161, 1169 (4th Cir.1985), cert. denied, 474 U.S. 946. The fair representation duty serves as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." Vaca, 386 U.S. at 182.
 
 
 13
 The duty of fair representation requires a union to represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements. International Bhd., of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979). A union may not discriminate against or show any favoritism in its treatment of its members. Smith v. Local 7898, United Steelworkers of Amer., 834 F.2d 93, 96 (4th Cir.1987). It must act in complete good faith and honesty, and must avoid arbitrary conduct. Holcomb v. Colony Bay Coal Co., 852 F.2d 792, 796 (4th Cir.1988). In establishing unfair representation, a plaintiff need not show that the union's conduct was intentional. Carpenter v. West Virginia Flat Glass, Inc., 763 F.2d 622, 624 (4th Cir.1985). Instead, a union may be guilty of unfair representation when it processes a grievance in a perfunctory manner, id; when its actions are indifferent to its members' rights, Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980); or when its conduct in protecting its members' rights is so grossly deficient as to be arbitrary. Id.
 
 
 14
 Under these standards, we have no hesitation in affirming the district court. The undisputed evidence establishes that the Union's conduct was not violative of its duty of fair representation. The Union conducted two separate investigations into the matter pursuant to Reedy and Curtis' requests. Moreover, although the Union was not required to pursue Reedy and Curtis' grievances, see Griffin, 469 F.2d at 183, it presented and argued their cases through several steps of the grievance process. Likewise, the Union was not absolutely required to take Reedy and Curtis' grievances to arbitration, see Vaca, 386 U.S. at 191, and there is no evidence that the Union abused its discretion in refusing to do so.
 
 
 15
 We recognize that a Union "must especially avoid capricious and arbitrary behavior in the handling of a grievance based on a discharge." Griffin, 469 F.2d at 183. In this case, however, the evidence reveals that the Union lived up to this requirement. Therefore, the Order of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Although the district court did not deny Reedy and Curtis' motion in its Order, it did deny this motion at the hearing. Because we find that the district court correctly granted the Union's motion for summary judgment on the issue of fair representation, we need not address the district court's ruling on Reedy and Curtis' motion since the case cannot proceed without the Union. See Vaca v. Sipes, 386 U.S. 184, 186-88 (1967)
 
 
 [2]
 O'Brien observed Curtis put items directly into Reedy's bag without scanning or registering them, lift merchandise over the scanner to prevent the register from recording the sale, and scan items stacked on top of one another, thereby preventing scanning. O'Brien also noticed that Curtis accepted what appeared to be too many coupons for the transaction
 
 
 [3]
 For example, various witnesses testified that Curtis had purposely lifted items over the scanner, that Reedy was violating the coupon policy at the store, that Reedy had earlier tried to redeem too many coupons at another employee's register, that Curtis' register was not malfunctioning, and that Curtis had not complained to anyone about a problem with her hearing